1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICARDO MARTINEZ, et al.,

                          Plaintiffs,

       v.

EASTSIDE FIRE AND RESCUE, et al.,

                          Defendants.

CASE NO. 2:24-cv-01706-TL

ORDER ON MOTION TO DISMISS

This case arises from constitutional challenges by thirteen former firefighters to mask and vaccine mandates issued by Eastside Fire and Rescue during their tenure as employees. This matter is before the Court on Defendant Eastside Fire and Rescue's motion to dismiss. Dkt. No. 15. Having considered Plaintiffs' response (Dkt. No. 16), Defendant's reply (Dkt. No. 18), Defendant's notice of supplemental authority (Dkt. No. 19), and the relevant record, the Court GRANTS the motion.

# I.    BACKGROUND

The following factual background is drawn from Plaintiff's complaint (Dkt. No. 1) and attached exhibits (Dkt. Nos. 1-1–1-9). *See infra* Section II.

Plaintiffs Ricardo Martinez, Frank Dahlquist, Chad DeVlieger, Danny Evanger, Kyle Felmley, Anson Friar, Aaron Hendrickson, Domonick Miller, Jason Stearns, Joseph Stone, Jeff Storey, Jason Stotler, and Zachary Zwaller are former employees of Defendant Eastside Fire and Rescue ("EFR") who allege that they were terminated or otherwise forced to end their employment at various times from 2021 to 2023 as a result of their opposition to EFR's 2021 Directive requiring employees to become vaccinated against COVID-19. *See* Dkt. No. 1 ¶¶ 67, 143–47.

"COVID-19 is a . . . severe acute respiratory illness caused by a virus that is most commonly transmitted person to person." *Slidewaters LLC v. Wash. State Dep't of Labor and Indus.*, 4 F.4th 747, 752 (9th Cir. 2021). On February 29, 2020, Washington State declared a state of emergency as a result of the COVID-19 outbreak in the United States and "confirmed person-to-person" spread of COVID-19 in Washington State. Dkt. No. 1-7 (Exhibit G: Proclamation 21-14.1) at 1.

In response to the 2020 COVID-19 outbreak, the federal government, through the Centers for Disease Control and Prevention ("CDC"), established a program to distribute and administer COVID-19 vaccines as an emergency public function. *See* Dkt. No. 1 ¶ 20. Under this program, the federal government published guidelines to help Washington and other states "operationalize a vaccination response to COVID-19 within [their] jurisdiction[s]" and develop "COVID-19 vaccination program[s] . . . and [their] implementation." *Id.* ¶ 41 (quoting Dkt. No. 1-2 (Exhibit B: CDC Covid-19 Program Playbook)). These federal guidelines outlined requirements for states' vaccine programs, including by directing states to "[h]elp the public to understand key

differences in FDA emergency use authorization and FDA approval." *Id.* ¶ 42 (quoting Dkt. No. 1-2 at 42). The CDC program also provided states with standardized provider agreements to be used by individual vaccine providers within states. *Id.* ¶¶ 44–45.

Plaintiffs allege that Defendant EFR was a vaccination provider in Washington and was therefore a signatory to the standardized provider agreement. *Id.* ¶ 47. Accordingly, Plaintiffs allege that this conferred a duty upon Defendants to "ensure Plaintiffs were informed of their right to accept or refuse the product and to comply with any [emergency use authorization ("EUA")]." *Id.* ¶ 48.

On August 23, 2021, Defendant EFR issued a Directive to its employees, including Plaintiffs, requiring them to "[s]ubmit acceptable proof of full vaccination against COVID-19." Dkt. No. 1 ¶ 67 (quoting Dkt. No. 1-4 (Exhibit D: EFR Directive No. 2021-11)). The three vaccines identified on the Directive were all, at the time, authorized for emergency use. *Id.* ¶ 68. Plaintiffs Martinez, Dahlquist, DeVlieger, Felmley, Herdrickson, Stone, Storey, and Stotler did not receive any Covid-19 vaccine in compliance with Defendant's Directive and were terminated. *Id.* ¶ 143. Plaintiff Friar chose to resign from his position with Defendant rather than comply with the Directive. *Id.* ¶ 144. Plaintiffs Stearns and Zwaller chose a "five-year reduction in force," but it is unclear whether they complied with Defendant's Directive. *Id.* ¶ 145. Plaintiff Evanger chose to retire from his employment with Defendant rather than comply with the Directive. *Id.* ¶ 146. Plaintiff Miller did receive the vaccine in compliance with the Directive, but "sustained permanent life-altering and debilitating injuries including loss of vision in his left eye, severe fatigue due to lack of oxygen absorption, severe migraine headaches lasting for days and requiring isolation in near total darkness, and other health issues." *Id.* ¶ 147.

Plaintiffs allege that Defendants "concealed . . . that the [vaccines] were investigational, were not licensed or approved by the FDA, and did not prevent transmission of infection, and

further concealed Plaintiffs' right to refuse the drugs under the federally funded CDC Program

without penalty or pressure." *Id.* ¶ 72.

Plaintiffs filed the instant action in October 2024, bringing claims under the Due Process

and Equal Protection Clauses of the Fourteenth Amendment, as well as claims for right to

privacy, procedural due process, and unlawful termination. Dkt. No. 1. Defendant EFR[1] moves

to dismiss Plaintiffs' complaint in full. *See* Dkt. No. 15.

## II.    PRELIMINARY DISPUTE

Defendant EFR requests that the Court consider "the Governor's Proclamation, EFR's

Directive, the exhibits attached to the Complaint, and judicially noticeable government websites

and documents" under either the incorporation by reference or judicial notice doctrines. Dkt.

No. 15 at 12 n.9. Plaintiffs oppose consideration of any documents or data outside of their

complaint. *See* Dkt. No. 16 at 5–8. Confusingly, Plaintiffs argue that because they "expressly

dispute all factual matters contained in the government records and data cited in Defendant's

motion, as well as the extrinsic documents and data referenced in Defendant's cited cases," the

Court cannot consider the documents. But Plaintiffs do not specifically identify the documents

and data they dispute, nor do they offer any explanation as to why the evidence should not be

considered—even where they appear to dispute factual assertions supported by documents *they*

*themselves attached in support of their complaint. Compare, e.g.*, Dkt. No. 15 at 10 (Defendant's

statement of facts, asserting that "EFR issued Directive 2021-11 (the 'Directive'), which

'provide[d] direction to all uniformed employees to comply with the proclamation by October

18, 2021'"), *with* Dkt. No. 1 ¶ 3 (Plaintiffs' complaint, asserting that "[o]n August 23, 2021,

Defendants—Fire Chief Jeff Clark, Governmental Members, certain officers, board members,

---

[1] Only Defendant Eastside Fire and Rescue filed a motion to dismiss.

and employees of Eastside Fire and Rescue—issued Directive 21-11,[2] an investigational new

drug ('IND') mandate ('IND Mandate') requiring all employees to inject into their bodies by

October 18, 2021 federally funded investigational drugs offered exclusively under the CDC

Program").

As the Court need not and does not rely on any documents or government websites other

than the exhibits attached to the Complaint, the Court will only address those nine exhibits:

- Exhibit A: 8-23-2021 FDA EUA letter to Pfizer Inc. (Dkt. No. 1-1);
- Exhibit B: CDC COVID-19 program playbook that provided vaccination program interim operational guidance (Dkt. No. 1-2);
- Exhibit C: CDC COVID-19 vaccination program provider agreement (Dkt. No. 1-3);
- Exhibit D: Eastside Fire & Rescue Directive regarding the COVID vaccine mandate (Dkt. No. 1-4);
- Exhibit E: 12-11-2020 FDA EUA letter to Pfizer Inc. (Dkt. No. 1-5);
- Exhibit F: CDC COVID-19 vaccine-related codes (Dkt. No. 1-6);
- Exhibit G: Governor Inslee's amended proclamation 21-14.1 regarding COVID-19 vaccination requirement (Dkt. No. 1-7);
- Exhibit H: Bylaws of Eastside Fire & Rescue (Dkt. No. 1-8); and
- Exhibit I: Memorandum of understanding between EFR and International Association of Fire Fighters Local 2878 (Dkt. No. 1-9).

Since it appears Plaintiffs may be attacking portions of the documents they themselves attached

to the Complaint, the Court will, out of an abundance of caution, address whether the entirety of

the documents may be considered.

Plaintiffs contend that Defendant's request for the Court to both consider documents

under the incorporation-by-reference doctrine and also take judicial notice of them is improper,

arguing that Defendant "must choose one legal approach or the other but not both for the same

---

[2] Directive 2021-11 is Exhibit 4 to Plaintiff's Complaint. Dkt. No. 1-4.

document." Dkt. No. 16 at 7. But Plaintiffs cite no support for this proposition, and courts have recognized the simultaneous application of both judicial notice and incorporation by reference to a single document. *See, e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024) ("Defendant requests that the Court take judicial notice and/or incorporate-by-reference [of] seven documents"). While, as Plaintiffs point out, application of the incorporation-by-reference and the judicial notice doctrines have different effects, courts are not foreclosed from considering the same document under both doctrines.

## A.    Incorporation by Reference

Under the doctrine of incorporation by reference, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), (holding a document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). "But the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement*, 593 F.3d at 1038. In addition, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "Although the incorporation by reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* at 1003. Finally, a court "may, but is not required to, incorporate documents by reference." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (cleaned up).

Pursuant to Fed. R. Civ. P. Rule 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The nine documents are exhibits to Plaintiffs' Complaint and, therefore, are part of the pleading for all purposes. Further, Plaintiffs themselves attached the documents to their Complaint so that there cannot be any question that Plaintiffs are relying on the documents in support of their allegations and they, therefore, form the basis of Plaintiffs' claims. As documents attached to a complaint are incorporated therein by reference and are deemed part of the complaint, they can be considered in evaluating the merits of a Rule 12(b)(6) motion. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). "If an exhibit attached to a complaint contradicts an assertion in the complaint . . . , the information provided in the exhibit trumps the allegation in the complaint." *Angelone v. Brown*, No. C24-96, 2024 WL 4610558, at *2 (E.D. Wash. Oct. 29, 2024) (citing *Wilson v. Fitter*, No. C09-1162, 2009 WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009), *report and recommendation adopted*, 2010 WL 3893992 (C.D. Cal. Sept. 30, 2010)).

**B.    Judicial Notice**

Plaintiffs contend that consideration of any documents outside of the complaint would improperly shift the pleading burden at the motion to dismiss stage, citing to *Khoja*, 899 F.3d 988. Dkt. No. 16 at 6–7. In *Khoja*, the Ninth Circuit cautioned courts to be aware of defendants "exploiting [the judicial notice] procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." 899 F.3d at 998. But the court continued on to explain that "[t]his risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Id.* The informational imbalance in *Khoja* does not exist here, as the documents at issue are either attached to the complaint or otherwise publicly available—in other words,

accessible to and relied upon by Plaintiffs—and Plaintiffs are not subject to a heightened

pleadings standard. Further, *Khoja* did not disrupt other Ninth Circuit precedent, which holds

that district courts need not accept as true allegations in a complaint that are contradicted by

matters properly subject to judicial notice or in the complaint's attachment. *See Gonzalez v.

Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014); *Sprewell v. Golden

State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended by* 275 F.3d 1187 (9th Cir. 2001);

*Curtis v. Inslee*, 709 F. Supp. 3d 1257, 1263 (W.D. Wash. 2023).

Accordingly, the Court will take judicial notice of the exhibits that Plaintiffs themselves

attached to their Complaint.

### III.   LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion to dismiss, the

Court takes all well-pleaded factual allegations as true and considers whether the complaint

"state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements," are

insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 672.

In determining whether a complaint plausibly alleges a claim to relief, the court generally

limits its review to the contents of the compliant, and "accept[s] as true all facts alleged in the

complaint and construe[s] them in the light most favorable to plaintiff[], the non-moving party."

*DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in

original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57

(9th Cir. 2017)); *Sprewell*, 266 F.3d at 988. However, the court need not "accept as true . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. Further, the court may "consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment," *Ritchie*, 342 F.3d at 908, and need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit," *Sprewell*, 266 F.3d at 988.

## IV.    DISCUSSION

### A.    Section 1983 Claims

Plaintiffs bring seven causes of action under 42 U.S.C. § 1983[3]: (1) "Unwanted Investigational Drug Treatment" (Dkt. No. 1 ¶¶ 148–61); (2) "Unwanted Use of EUA Drugs" (*id.* ¶¶ 162–85); (3) "Unwanted PREP Act Countermeasure" (*id.* ¶¶ 186–204); (4) "Deprivation of Federal Benefits" (*id.* ¶¶ 205–18); (5) "Deprivation of Equal Protection Rights" (*id.* ¶¶ 219–35); (6) "Deprivation of Right to Privacy" (*id.* ¶¶ 236–52); and (7) "Deprivation of Procedural Due Process" (*id.* ¶¶ 253–63). These causes of action appear to assert violations of various federal statutes and regulations, including the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d *et seq.* ("PREP Act"), and the Emergency Use Authorization Act, 21 U.S.C. ¶ 360bbb-3 ("EUA Act"), in addition to violations of various constitutional rights. *See, e.g.*, Dkt. No. 1 ¶¶ 93–94.

---

[3] While Defendant EFR appears to interpret these as substantive due process claims (*see* Dkt. No. 15 at 13), Plaintiffs argue that their "claims arise under 42 U.S.C. § 1983" (Dkt. No. 16 at 15). None of these claims are titled as substantive due process claims. For example, Plaintiffs titled their First Cause of Action in this case for "Unwanted Investigational Drug Treatment" pursuant to 42 U.S.C. § 1983 as "Fourteenth Amendment – Due Process Clause." Dkt. No. 1 at 31. However, in *Brock v. City of Bellingham*, No. C24-850 (W.D. Wash.), a similar case brought by the same Plaintiff's Counsel, plaintiffs specifically titled their cause of action regarding investigational drugs "Substantive Due Process - Investigational Drug." *Brock*, 2025 WL 254725, at *8. Accordingly, the Court will interpret these claims as Section 1983 claims.

1    "In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

2   conduct complained of was committed by a person acting under color of law, and (2) the conduct

3   deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

4   United States." *Curtis*, 709 F. Supp. 3d at 1266 (citing *Parratt v. Taylor*, 451 U.S. 527, 535

5   (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). "In order to

6   seek redress through Section 1983, . . . a plaintiff must assert the violation of a federal *right*, not

7   merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (cleaned up)

8   (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).

9        Defendant EFR does not dispute that it is a governmental entity, thus establishing the first

10   prong of a Section 1983 claim. *See* Dkt. No. 15 at 13. Therefore, the only issue here is whether

11   Plaintiffs have sufficiently pleaded that they have been deprived of rights, privileges, or

12   immunities secured by the Constitution or laws of the United States.

13        In analyzing each claim, the Court bears in mind that "not every federal law creates rights

14   that may be enforced under Section 1983." *Brock v. City of Bellingham*, No. C24-850, 2025 WL

15   254725, at *5 (W.D. Wash. Jan. 21, 2025) (cleaned up). In evaluating whether a statute creates

16   rights enforceable under Section 1983, courts "must employ traditional tools of statutory

17   construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a

18   class of beneficiaries' to which the plaintiff belongs.'" *Id.* (quoting *Health and Hospital Corp. of

19   Marion Cty. v. Talevski*, 599 U.S. 166, 183 (2023)). "A statute unambiguously confers individual

20   rights if it is 'phrased in terms of the persons benefitted' and 'contains rights-creating,

21   individual-centric language with an unmistakable focus on the benefited class.'" *Id.* (quoting

22   *Talevski*, 599 U.S. at 183). "Moreover, even if 'a statutory provision unambiguously secures

23   rights, a defendant may defeat the presumption by demonstrating that Congress did not intend

24

that Section 1983 be available to enforce those rights.'" *Id.* (cleaned up) (quoting *Talevski*, 599 U.S. at 186).

### 1. Unwanted Investigational Drug Treatment (Count 1)

The first cause of action purports to assert that Defendants deprived Plaintiffs of their "fundamental right to refuse unwanted investigational drugs and unwanted medical treatments." Dkt. No. 1 ¶¶ 150–51. This claim fails for three independent reasons, any one of which is sufficient to warrant dismissal.

#### a. Whether the Vaccine Available to Plaintiffs Was an "Investigational Drug"

Plaintiffs' claims maintain that Defendants denied Plaintiffs the right to "refuse unwanted investigational drugs." Dkt. No. 1 ¶ 150; *see also* Defendant EFR contends that to the extent any such right exists, "[Plaintiffs] were not implicated by the implementing Directive because the COVID-19 vaccine is not an 'investigational drug,' and Plaintiffs were able to refuse the vaccine." Dkt. No. 15 at 14.

Although the complaint does not include a legal or scientific definition of the phrase "investigational drug," the Court, like the court in *Brock*, 2025 WL 254725, at *3, will understand Plaintiffs to mean "an investigational vaccine not licensed for any indication" and "without a legal indication to treat, cure, or prevent any known disease." *See* Dkt. No. 1 ¶¶ 69, 33. But as Exhibit A to Plaintiffs' complaint demonstrates, on August 23, 2021—the same date that Defendant EFR's vaccine mandate was issued—the FDA "approved the biologics license application (BLA) submitted by BioNTech Manufacturing GmbH for COMIRNATY (COVID-19 Vaccine, mRNA) for active immunization to prevent COVID-19 caused by SARS-CoV-2 in individuals 16 years of age and older." Dkt. No. 1-1, at 2. As the *Brock* court explained: "In doing so, FDA emphasized that 'COMIRNATY (COVID-19 Vaccine, mRNA) is the same formulation as the Pfizer-BioNTech COVID-19 Vaccine and can be used interchangeably with

the Pfizer-BioNTech COVID-19 Vaccine to provide the COVID-19 vaccination series.'" 2025 WL 254725, at *4 (quoting FDA Approval Letter); Dkt. No. 1-1 at 2; *see also* Dkt. No. 1 ¶ 70. In other words, on the day Defendant EFR issued its Directive mandating vaccination of EFR employees, the Pfizer vaccine was no longer an "investigational drug." Multiple courts have reached this same conclusion, rejecting the argument that Plaintiffs make here. *Brock*, 2025 WL 254725, at *4 (collecting cases); *see also, e.g.*, *Curtis*, 709 F. Supp. 3d at 1264 ("On August 23, 2021, the Pfizer-BioNTech vaccine, COMIRNATY®, received full approval for individuals 16 and older.") (citing, *inter alia*, FDA Approval Letter); *Church v. Biden*, 2022 WL 1491100, at *2 (D.D.C. May 11, 2022) ("On August 23, 2021, the FDA approved the vaccine created by Pfizer BioNTech, which would be marketed as "Comirnaty," for "the prevention of COVID-19 disease in individuals 16 years of age and older.") (citing FDA News Release, FDA Approves First COVID-19 Vaccine (Aug. 23, 2021)); *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 (C.D. Cal. 2022) ("The Pfizer vaccine has received full FDA approval, and is no longer merely authorized under the EUA statute. Therefore, the informed consent requirements of the EUA statute do not apply to the Pfizer vaccine.").

Plaintiffs appear to argue that the approved Pfizer vaccine was never made available to Plaintiffs. *See* Dkt. No. 1 ¶ 70. But contrary to Plaintiffs' assertion that Pfizer, Inc. "informed the CDC that it had not manufactured, nor did it plan to manufacture, its licensed version" (i.e., COMIRNATY), Exhibit F to Plaintiffs' complaint—which the Court notes is dated September 28, 2022—does not demonstrate that the approved vaccine was *never* made available by Pfizer. It only stands for the proposition that the originally approved vaccine (COMIRNATY) was no longer made available after a subsequent tris-sucrose formulation was approved by the FDA. *See* Dkt. No. 1-6 at 4 ("Only NDCs for the subsequently BLA approved tris-sucrose formulation will be produced."). Accordingly, as Plaintiffs' allegation that "all drugs and devices available to

Plaintiffs to comply with Defendants' [Directive] were introduced into commerce under

emergency use authorization" (Dkt. No. 1 ¶ 165) is contradicted by Exhibit A to Plaintiffs'

complaint (Dkt. No. 1-1), the Court need not accept this allegation as true. *See Sprewell*, 266

F.3d at 988.

This is an independent ground to dismiss Plaintiffs' first cause of action, which relies on

Plaintiffs' allegation that they were forced to receive "investigational medical treatments."[4]

### b. *Whether Plaintiffs were Forced to Receive Unwanted Medical Treatment*

Plaintiffs' claims additionally maintain that Plaintiffs were forced to receive unwanted

medical treatment. Dkt. No. 1 ¶ 1; *see also id.* ¶ 34 ("Punishing Plaintiffs for refusing

investigational drugs and unwanted medical treatments violates Plaintiffs' fundamental right to

bodily autonomy, their property rights under the CDC Program and applicable laws, and their

constitutional rights under the Fourteenth Amendment . . . ."). Defendant contends that

"Plaintiffs were not forced to get unwanted medical treatment; they had every right not to

comply with the Proclamation and EFR's implementing Directive with respect to vaccination."

Dkt. No. 15 at 15.

As other courts in this Circuit have determined, Proclamation 21-24 (and, by extension,

Proclamation 21-24.1) "does not require anyone to receive a vaccine; it merely establishes

employment requirements for certain state employees." *Wise v. Inslee*, No. C21-288, 2022 WL

1243662, at *2 (E.D. Wash. Apr. 27, 2022). Plaintiffs here, like the plaintiffs in *Wise*, could

"choose to get vaccinated and remain employed . . . or they [could] decline vaccination and seek

an accommodation. Alternatively, they can decline vaccination and seek employment

---

[4] Plaintiffs also raise this issue as a basis for their Second and Sixth Causes of Action. Dkt. No. 1 ¶¶ 165 (alleging that "[a]ll drugs and devices available to Plaintiffs to comply with Defendants' [Directive] were introduced under emergency use authorization"), 240 (alleging "Plaintiffs have a legally protected interest in their bodily integrity and whether to receive investigational or non-investigational medical treatments"). For the same reasons cited in this section, the argument fails with regard to the second and sixth claims.

1  elsewhere." *Id.* at *5. And that is exactly what happened here. According to the facts pled by

2  Plaintiffs, one Plaintiff (Miller) chose to get the vaccination and remain employed (Dkt. No. 1

3  ¶ 147) while all the other Plaintiffs actually exercised their fundamental right to refuse the

4  unwanted medical treatments (*id.* ¶¶ 143–46). Accordingly, Proclamation 21-24 *et seq.* and

5  Defendant EFR's Directive did not, as Plaintiffs argue, "[m]andat[e] that public employees inject

6  unlicensed drugs into their bodies." Dkt. No. 16 at 13.

7      Further, "there is no fundamental right to continued employment in a particular job."

8  *Wise*, 2022 WL 1243662, at *5 (citing *Kupau v. U.S. Dep't of Lab.*, 597 F. Supp. 2d 1113, 1123

9  (D. Haw. 2009)). "When the state acts as employer, the court must consider the 'crucial

10 difference between the government exercising the power to regulate or license, as lawmaker, and

11 the government acting as proprietor, to manage its internal operation.'" *Id.* (cleaned up) (quoting

12 *Burcham*, 2022 WL 99863, at *7). Thus, to the extent that Plaintiffs argue that they were forced

13 to choose between unwanted medical treatment or continued employment, they had no

14 fundamental right to continued employment.

15     This is an independent ground to dismiss Plaintiffs' first cause of action, which relies on

16 Plaintiffs' allegation that they were forced to receive "unwanted medical treatment."[5]

17         c.  **Whether Defendant EFR's Directive Implicated a Fundamental Liberty
               Interest**

18     Even if the Court were to take as accurate Plaintiffs' characterization of the Pfizer

19 vaccine as "investigational" and "unwanted," the actual heart of Plaintiff's first claim is that

20 "Defendants have no discretionary authority to condition public employment upon Plaintiffs

21 being administered investigational new drugs or medical treatments." *Id.* ¶ 152. In other words,

22

23 ───────────────

24
[5] Plaintiffs also raise this issue as a basis for their Sixth Cause of Action. Dkt. No. 1 ¶ 240 (alleging "Plaintiffs have a legally protected interest in . . . whether to receive investigational or non-investigational medical treatments"). For the same reasons cited in this section, the argument fails with regard to the sixth claim.

the interest Plaintiffs have articulated as their first cause of action is the right to continued public employment without receiving the COVID-19 vaccine. Plaintiffs fail to provide any authority creating such an enforceable right under Section 1983. And, to the contrary, "[a]n innumerable number of federal courts have determined that conditioning continued employment on receiving a COVID-19 vaccine does not implicate a fundamental liberty interest." *Brock*, 2025 WL 254725, at *9; *Aleman v. Cnty. of Los Angeles*, No. C23-10272, 2024 WL 5257028, at *6 (C.D. Cal. Sept. 23, 2024) ("[H]ere the Policy requires vaccination as a condition of Plaintiff's employment, and 'there is no fundamental right to governmental employment' under the Fourteenth Amendment." (quoting *Canfield v. Sullivan*, 774 F.2d 1466, 1469 (9th Cir. 1985))); *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 706 (C.D. Cal. 2022) (rejecting Los Angeles Police Department employees' argument that City COVID-19 vaccine mandate was subject to strict scrutiny in part because there is "no fundamental right to continued governmental employment"); *Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 139 (N.D.N.Y. 2021) ("[T]he Vaccine Mandate conditions Plaintiffs' right to be employed at a covered entity on their vaccination against COVID-19. Thus, the right that is being burdened is the right to employment at a covered healthcare entity in New York."); *Bauer v. Summey*, 568 F. Supp. 3d 573, 592 (D.S.C. 2021) ("Plaintiffs' overly general characterization of the rights at issue as 'bodily integrity' or 'privacy' falls short of the required 'careful description' of the liberty interest. Rather, a more appropriate description is plaintiffs' interest in employment with defendants while unvaccinated for COVID-19."). This Court agrees and joins the other federal courts in finding that Defendants' Directive did not implicate a fundamental liberty interest. Therefore, Plaintiff's first claim does not allege a right enforceable under Section 1983 and must be dismissed.

### 2.    Right to Refuse Pursuant to EUA Act (Counts 2 and 4)

Plaintiffs' second and fourth claims cite the right to refuse provision (also referred to as the informed-consent provision) in the Emergency Use Authorization Act, 21 U.S.C. ¶ 360bbb-3 ("EUA Act") as a source of federal rights they claim are enforceable under Section 1983. *See* Dkt. No. 1 ¶¶ 164, 213. The right to refuse section provides, in relevant part, that "[w]ith respect to the emergency use of an unapproved product, the Secretary . . . shall . . . establish . . . [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, [and] of the consequences, if any, of refusing administration of the product." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii); *Brock*, 2025 WL 254725, at *5.

The Court concludes, as numerous other courts have already concluded, that this provision does not create rights privately enforceable under Section 1983 or otherwise. *Brock*, 2025 WL 254725, at *6; *see also, e.g.*, *Curtis v. Inslee*, No. C23-5741, 2024 WL 810503, at *6 (W.D. Wash. Feb. 27, 2024) ("Plaintiffs' proposed second amended complaint again fails to point to federal law—whether statutory, regulatory, international treaty provisions or some other source—that 'unambiguously confer' individual federal rights enforceable under Section 1983 which would entitle them to relief here." (cleaned up)). As the *Brock* court determined, "[t]he provision that Plaintiffs cite merely directs the Secretary of Health and Human Services to 'establish . . . appropriate conditions' to 'ensure' that individuals under certain circumstances are properly informed about emergency use medications. It is not 'phrased in terms of the persons benefited' and contains no 'rights-creating' or 'individual-centric' language." *Brock*, 2025 WL 254725, at *6 (quoting *Talevski*, 599 U.S. at 183).

Further, the Ninth Circuit has determined that the federal Food, Drug, and Cosmetic Act ("FDCA"), which contains the EUA provision, "expressly states that (subject to exceptions not

relevant here) all proceedings to enforce that statute 'shall be by and in the name of the United States.'" *Standley on behalf of B.M.S. v. Nelms*, No. 22-35833, 2024 WL 1793667, at *3 (9th Cir. Apr. 25, 2024) (quoting 21 U.S.C. § 337(a)); *see also Brock*, 2025 WL 254725, at *6; *Peralta v. New York City Dep't of Ed.*, No. C21-6833, 2023 WL 6201507, at *6 (E.D.N.Y. Sept. 22, 2023) ("Section 360bbb-3 does not provide an individual right. The Second Circuit likewise has held that no private right of action exists to enforce the FDCA, citing the fact that the statute explicitly restricts enforcement to suits by the United States."). Accordingly, Section 1983 is not available to enforce any rights conferred through the FDCA. Because Plaintiffs' second and fourth claims attempt to use Section 1983 to create a federal cause of action to enforce the requirements of the FDCA, these claims are foreclosed.

Therefore, Plaintiffs' second and fourth claims do not allege any rights enforceable under Section 1983 and must be dismissed.

### 3. Unwanted PREP Act Countermeasure (Count 3)

Plaintiffs' third claim cites the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d *et seq.* ("PREP Act") as a source of federal rights they claim are enforceable under Section 1983. *See* Dkt. No. 1 ¶ 187. Like Plaintiff's EUA Act claim, Plaintiff's PREP Act claim does not create an enforceable right under Section 1983.

"Congress passed the PREP Act to encourage the development and deployment of medical countermeasures (such as diagnostics, treatments, and vaccines) by limiting legal liability relating to their administration during times of crisis." *Brock*, 2025 WL 254725, at *7 (quoting *Curtis*, 2024 WL 810503, at *6). "The statute provides immunity for a 'covered person' from 'all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure,' such as a vaccine." *Id.* (quoting 42 U.S.C. § 247d-6d(a)(1)). "A 'covered person' includes 'persons who make

policy-level decisions regarding administration or use of covered countermeasures.'" *Id.* (quoting *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024)). "Suits against a covered person are limited to claims involving 'death or serious physical injury proximately caused by willful misconduct.'" *Id.* (quoting 42 U.S.C. § 247d-6d).

Under the *Talevski* test outlined above, *supra* Section III.B., "the PREP Act does not 'unambiguously' create rights Plaintiffs might enforce under Section 1983." *Brock*, 2025 WL 254725, at *7; *see also Sweeny v. Univ. of Colorado Hospital Authority*, No. C23-2451, 2024 WL 3713835, at *8 (D. Colo. July 12, 2024) (collecting cases). To the contrary, the PREP Act "in fact *limits* lawsuits based on administration of EUA drugs to claims involving only 'death or serious physical injury,' and provides a narrowly circumscribed procedure by which such claims might even be brought." *Brock*, 2025 WL 254725, at *7 (citing 42 U.S.C. § 247d-6d(e)(1) (providing that claims under the PREP Act must "be filed and maintained only in the United States District Court for the District of Columbia")). Plaintiffs argue that "[w]hen proceeding under Section 1983, a plaintiff need only establish that the underlying law creates an individual right," and that the "right to sue comes from Section 1983 itself." Dkt. No. 16 at 16. However, the express limitations of the right to sue in the PREP Act demonstrates that the PREP Act does not "*unambiguously*" create rights enforceable under Section 1983. *Brock*, 2025 WL 254725, at *7 (emphasis added).

Plaintiffs fail to address the *Talevski* test, instead arguing preemption and faulting Defendants for ignoring the issue. Dkt. No. 16 at 17–18. However, arguing preemption misses the forest for the trees. The Court need not reach the preemption issue because even *assuming arguendo* Plaintiffs are correct on the issue, the PREP Act would not create any enforceable right under Section 1983 under which Plaintiffs could bring a claim.

Therefore, Plaintiffs' third claim does not allege any right enforceable under Section 1983 and must be dismissed.

### 4. Equal Protection Claim (Count 5)

Plaintiffs' fifth cause of action asserts that Defendants violated the Fourteenth Amendment's Equal Protection Clause by discriminating against individuals who exercised "their option to refuse under the EUA Statute," individuals who exercised "their right to refuse the INDs," and individuals "who chose not to participate in the federally funded CDC Program." *See id.* ¶¶ 219–35.

"Under the Fourteenth Amendment to the U.S. Constitution, 'no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'" *Brock*, 2025 WL 254725, at *13 (internal citation omitted) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[C]ourts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have instead applied rational basis review." *Williams v. Brown*, 567 F. Supp. 3d 1213, 1227 (D. Or. 2021). Plaintiffs have not argued, and based upon their allegations would not be able to establish, that they are members of a suspect class. *See Brock*, 2025 WL 254725, at *13; *Boysen v. Peacehealth*, No. C23-1229, 2024 WL 3888682, at *8 (D. Or. Aug. 19, 2024) ("[U]nvaccinated individuals do not constitute a suspect class."); *Schmidt*, 2023 WL 4291440, at *11 ("Plaintiff has not shown that distinguishing between vaccinated and unvaccinated individuals reflects a suspect classification."). Accordingly, Plaintiffs' Equal Protection claim is subject to rational basis review.

"Under rational basis review, state conduct is presumed valid and will be upheld so long as it is 'rationally related to a legitimate state interest.'" *Brock*, 2025 WL 254725, at *10 (quoting *Cleburne*, 473 U.S. at 440). Defendant EFR's directive explains the legitimate state

interest to which it is related: to comply with the Governor's Proclamation 21-14. *See* Dkt. No. 1-4 at 1. And the Proclamation lays out extensive legitimate state interests to which the directive is rationally related:

> WHEREAS, during early stages of the COVID-19 pandemic, health professionals and epidemiological modeling experts indicated that the spread of COVID-19, if left unchecked, threatened to overwhelm portions of Washington's public and private health-care system; and
>
> WHEREAS, to protect some of our most vulnerable populations—persons in health care facilities, long-term care facilities (which includes nursing homes), and similar congregate care facilities—and to protect our health and congregate care systems themselves, I issued several proclamations imposing heightened protections on workers, residents, and visitors in those facilities; and
>
> WHEREAS, although COVID-19 continues as an ongoing and present threat in Washington State, the measures we have taken together as Washingtonians over the past 18 months, including the willingness of most Washingtonians to take advantage of the remarkable, lifesaving vaccines being administered throughout the state, have made a difference and have altered the course of the pandemic in fundamental ways; and
>
> WHEREAS, after months of improving COVID-19 epidemiological conditions in Washington State, the emergence of highly contagious COVID-19 variants, including the "Delta" variant that is at least twice as transmissible as the virus that emerged in late 2019, coupled with the continued significant numbers of unvaccinated people, have caused COVID-19 cases and hospitalizations to rise sharply among unvaccinated populations and have resulted in breakthrough infections in some fully vaccinated individuals; and
>
> WHEREAS, COVID-19 vaccines are effective in reducing infection and serious disease, and widespread vaccination is the primary means we have as a state to protect everyone, including persons who cannot be vaccinated for medical reasons, youth who are not eligible to receive a vaccine, immunocompromised individuals, and vulnerable persons including persons in health care facilities, long-term care facilities and other congregate care facilities from COVID-19 infections . . . .

Dkt. No. 1-7 at 1–2; *see also*, *id.* at 3–4. The Court need not consider extraneous information regarding the COVID-19 vaccine's efficacy to conclude that Defendants' actions were rationally related to a legitimate state interest. *Brock*, 2025 WL 254725, at *10 (citing *Halgren v. City of Naperville*, 577 F. Supp. 3d 700, 738–39 (N.D. Ill. 2021) ("Because the legislative act may be based on rational speculation unsupported by evidence or empirical data, the state need not produce evidence to sustain its decision. Instead, despite any initial fact-finding by the court, the rational basis test commands deference to legislative choice in the end. . . . Courts must, therefore, accept a legislature's generalizations even when there is an imperfect fit between means and ends because a law can pass muster even if it is not made with mathematical nicety." (cleaned up, citations omitted)), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022)).

As numerous courts have concluded, "COVID-19 vaccination mandates, adopted under materially identical circumstances, pass this lowest level of judicial scrutiny." *Brock*, 2025 WL 254725, at *11 (collecting cases). Plaintiffs have cited no authority to the contrary. *See* Dkt. No. 16 at 29–30.

Therefore, Plaintiffs' fifth cause of action does not allege a right enforceable under Section 1983 and must be dismissed.

### 5. Deprivation of Right to Privacy (Count 6)

Regarding Plaintiffs' claim to a "fundamental right of privacy," Defendant EFR concedes that the Ninth Circuit has "recognized an 'individual interest in avoiding disclosure of personal matters.'" Dkt. No. 15 at 19 (quoting *A.C. ex rel. Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022)). However, this informational privacy right "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Brock*, 2025 WL

1   254725, at *11 (quoting *Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014)). To determine a right

2   of privacy, courts apply a balancing test, weighing:

3           (1) the type of information requested, (2) the potential for harm in
        any subsequent non-consensual disclosure, (3) the adequacy of
4       safeguards to prevent unauthorized disclosure, (4) the degree of
        need for access, and (5) whether there is an express statutory
5       mandate, articulated public policy, or other recognizable public
        interest militating toward access.

6

7   *Id.* (quoting *Cortez*, 34 F.4th at 787). "Applying these factors, courts have found actionable

8   violations of privacy rights only where the information that has been disclosed is 'inherently

9   sensitive or intimate,' and where disclosure will cause 'injury, embarrassment, or stigma.'"

10  *Schmidt v. City of Pasadena*, No. C21-8769, 2024 WL 1640913, at *14 (C.D. Cal. Mar. 21,

11  2024) (quoting *In re Crawford*, 194 F.3d 954, 960 (1999)).

12          Plaintiffs' only argument with respect to this balancing test goes to the fifth factor:

13          there is no basis under which Defendant can claim a legitimate
        state interest in requiring Plaintiffs, as a condition of public
14      employment, to become human research subjects in federally
        funded research programs, to publicly disclose their private health
15      information to unknown persons, time, and reasons, and to have
        their privacy continually invaded by requiring Plaintiffs to inform
16      Defendant if and when Plaintiffs relinquished their bodily
        autonomy as a condition of public employment.

17

18  Dkt. No. 16 at 26–27. But courts within this Circuit have held that "[t]here is no basis to accept

19  an allegation that an individual's vaccination status is 'sensitive or intimate' under [the *Cortez*

20  standard]," and that allegations of a vaccination mandate for government employees, without

21  more, do not support the inference that disclosure of Plaintiffs' vaccination status is likely to

22  cause "injury, embarrassment, or stigma." *Schmidt*, 2024 WL 1640913, at *14; *see also Brock*,

23  2025 WL 254725, at *11. Similar to the plaintiffs in *Brock*, the only claimed injury here that is

24  supported is the loss of employment with Defendant EFR, "which is attributable not to any

violation of their 'informational privacy' rights (*i.e.*, disclosure of their vaccination status), but to their refusal to receive the vaccine." *Brock*, 2025 WL 254725, at *11.

Therefore, Plaintiffs' sixth claim does not allege a right enforceable under Section 1983 and must be dismissed.

### 6. Procedural Due Process Claim (Count 7)

Plaintiffs' seventh cause of action is labeled "Deprivation of Procedural Due Process." Dkt. No. 1 ¶¶ 253–63. It asserts that Defendants deprived Plaintiffs of procedural due process before they lost their public employment. *Id.* ¶ 255.

The "essential requirements of due process . . . are notice and an opportunity to respond." *Pilz v. Inslee*, No. C21-5735, 2022 WL 1719172, at *7 (W.D. Wash. May 27, 2022) (citing *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 546 (9185)), *aff'd*, 2023 WL 8866565 (9th Cir. Dec. 22, 2023). As in *Pilz* and *Brock*, "Plaintiffs here 'cannot seriously maintain that they did not have written notice of the vaccine requirement.'" *Brock*, 2025 WL 254725, at *12 (quoting *Pilz*, 2022 WL 1719172, at *7). Defendant EFR's Directive clearly articulated the vaccine requirements, set reasonable deadlines, outlined the consequences of failure to apply, clearly laid out an opportunity to be heard, and provided that employees could "[s]ubmit, and receive approval for a qualified accommodation as identified." Dkt. No. 1-4 at 1; *see also id.* at 2–3.

As the Ninth Circuit noted in discussing another COVID-19 vaccination mandate issued to firefighters in Washington, "with respect to a categorical challenge to the substance of a generally applicable law impacting property rights—such as 'continued employment in a state job'—we have held that no procedural due process is required beyond the proper promulgation of the new substantive rule." *Bacon v. Woodward*, No. 22-35611, 2024 WL 3041850, at *2 (9th Cir. June 18, 2024) (quoting *Rea v. Matteucci*, 121 F.3d 483, 484–85 (9th Cir. 1997)); *see also*

1    *Abshire v. Newsom*, No. 21-16442, 2023 WL 3243999, at *3 (9th Cir. May 4, 2023) (finding that

2    procedural due process was not violated because plaintiffs' own allegations showed that they

3    received pre-deprivation notice in the form of a citation); *Brock*, 2025 WL 254725, at *13. Like

4    in *Brock* and *Bacon*, Plaintiffs here have not claimed that the Directive was not "properly

5    promulgated," and so the Court "joins other district courts around the country that have rejected

6    procedural due process challenges to employer-issued vaccine mandates during the COVID-19

7    pandemic, finding employees are not entitled to greater service than what is provided by

8    enactment of the mandates themselves." *Brock*, 2025 WL 254725, at *13 (quoting *Pilz*, 2022 WL

9    1719172, at *7).

10            Plaintiffs argue that "notice alone is insufficient when Fourteenth Amendment property

11    rights are implicated." Dkt. No. 16 at 28. But Plaintiffs' complaint does not attempt to define the

12    contours of their purported property interest, nor does it address how that interest merits federal

13    protection. Further, this Court has previously rejected the argument that an employment contract

14    creates a federally-protectable property interest in employment for Section 1983 or due process

15    purposes. *See White v. Univ. of Wash.*, No. C22-1798, 2024 WL 1241063, at *13 (W.D. Wash.

16    Mar. 22, 2024). Plaintiffs also contend that Defendant was required to hold a hearing prior to

17    terminating any employees pursuant to *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532,

18    542–48 (1985) (Dkt. No. 16 at 29)—but *Loudermill* only requires an opportunity to be heard and

19    to present rebuttal affidavits, not necessarily a formal hearing. *See Pilz*, 2022 WL 1719172, at

20    *7; *see also Loudermill*, 470 U.S. at 545. The fact that Plaintiffs' accommodation requests were

21    unsuccessful does not belie the fact that Plaintiffs were given the opportunity to be heard

22    required by *Loudermill*. *See Pilz*, 2022 WL 1719172, at *7.

23            Therefore, Plaintiffs' seventh cause of action does not allege a right enforceable under

24    Section 1983 and must be dismissed.

**B.    Wrongful Termination Claim (Count 8)**

Plaintiffs' final claim is for wrongful termination under Washington common law. Dkt. No. 1 ¶¶ 264–70.

In Washington, "the tort of wrongful discharge 'is a narrow exception to the doctrine of at-will employment.'" *Brock*, 2025 WL 254725, at *14 (quoting *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 258 (2015)). "To state a cause of action, the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy." *Id.* (quoting *Becker*, 184 Wn.2d at 258). Accordingly, wrongful termination claims are limited to a narrow set of scenarios, "including most relevantly here, 'where employees are fired for exercising a legal right or privilege.'" *Id.* (quoting *Becker*, 184 Wn.2d at 258). But as the Court has determined, Plaintiffs have failed to demonstrate that in failing to comply with Defendant EFR's Directive, they were exercising a "legal right or privilege" under either state or federal constitutional or statutory law.

Therefore, Plaintiffs' eighth cause of action must be dismissed.

## V.    CONCLUSION

Accordingly, Defendant EFR's motion (Dkt. No. 15) is GRANTED. Plaintiffs' complaint is DISMISSED with leave to amend. Any amended complaint SHALL be filed **within thirty (30) days** of this Order. If Plaintiffs do not file an amended complaint within thirty days, this case SHALL be dismissed.

Dated this 10th day of June 2025.

Tana Lin
United States District Judge